IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINO MAGANALLEZ and MARY M. MAGALLANEZ,<br><br>    Plaintiffs,<br><br>  v.<br><br>HILLTOP LENDING CORPORATION, et al.,<br><br>    Defendants.<br>_____/ | No. C 06-07340 SI<br><br>**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |

Defendants have filed a motion to compel arbitration, and a motion to dismiss. Hearing on the motion is currently scheduled for April 27, 2007. Pursuant to Civil Local Rule 7-1(b), the Court determines that defendants' motions are appropriate for resolution without oral argument and hereby VACATES the April 27, 2007 hearing. For the following reasons and for good cause shown, the Court DENIES defendants' motion to compel arbitration, and GRANTS IN PART defendants' motion to dismiss.

**The Case Management Conference scheduled for April 27, 2007 remains on calendar. The parties are ORDERED to prepare and file a joint case management conference statement in advance of the conference.**

**BACKGROUND**

This case centers on allegations that defendants misled plaintiffs into placing an economically burdensome mortgage on their home.[1] In August 2005, defendant Lisa Kaur called plaintiff Marino

---

[1] All of the following facts are taken from plaintiffs' First Amended Complaint, the allegations of which must be taken as true at this point in the proceedings. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)

Magallanez at his home in San Leandro, California to discuss a home loan. Lisa Kaur was an employee of defendant Hilltop Lending Corporation, but she did not have a real estate license. At the time that Kaur solicited Marino, he and his wife Mary had a home loan of approximately $320,000.00. That loan had a fixed interest rate of 5.125% and a monthly payment of $1,770.00. Plaintiffs also had a line of credit of $30,000.00 with an interest rate of 7.25% and a monthly payment of $136.00.

Kaur suggested that plaintiffs consolidate these loans into a variable interest rate loan. She described a loan with an interest rate of 1% during the first year, which would increase by 1% each year until the fifth year, when it would reach 5%. After the fifth year, the interest would be based on the market rate. Kaur promised to refinance the loan within those five years to a loan with the same or better terms. She also promised that there would be no penalty if plaintiffs sold their home and that she would refund the costs of the loan above $2,000.00. On August 30, 2005, Kaur sent plaintiffs a letter setting forth these terms. The letter also stated that there would be a "3-year pre-payment penalty, if you choose to refinance within the first 3 years of this program."

Kaur assisted plaintiffs through the entire process of securing their loan. She obtained an appraisal of the home and gathered financial information about plaintiffs, including their credit score. Kaur wrote Downey Savings and Loan and requested certain loan terms for plaintiffs and a rebate of $11,862.50, 3.25% of the loan, for Hilltop Lending. Downey agreed to lend plaintiffs $365,000.00 and rebate Hilltop Lending $11,862.50. This rebate is referred to as the yield spread premium.[2]

Prior to the loan closing, Marino called Kaur to discuss the loan. She confirmed that the loan terms were those terms set forth in August 30, 2005 letter. Kaur subsequently faxed another letter to plaintiffs on December 6, 2005. This letter also confirmed the terms set forth in the August 30, 2005 letter, except that it stated that "[y]ou will not have a pre-payment penalty if you choose to pay your loan within 3 years. If such charge occurs, you will NOT be responsible for it. We guarantee that you will

---

[2] "A yield spread premium (YSP) is a payment made by a lender to a mortgage broker in exchange for that broker's delivering a mortgage ready for closing that is at an interest rate above the par value loan being offered by the lender. The YSP is the difference between the par rate and the actual rate of the loan; this difference is paid to the broker as a form of bonus. A YSP is typically a certain percentage of the loan amount; therefore, the higher the loan is above par value, the higher the YSP paid the mortgage broker." *Bjustrom v. Trust One Mortgage Corp.*, 332 F.3d 1201, 1204 (9th Cir. 2003) (internal citations omitted).

have no pre-payment penalty." Relying on the terms set forth in this letter, plaintiffs executed the loan on December 6, 2005. Plaintiffs would not have taken out the loan unless it included the terms set forth in the December 6, 2005 letter.

The actual promissory note that plaintiffs signed, for $365,000.00, contained terms very different from those originally discussed and set forth in the December 6, 2005 letter. The loan had a variable interest rate and allowed negative amortization. The initial monthly payments were fixed for a year beginning on February 1, 2006, and were $1,011.68. After that, the payments could increase by no more than 7.5% per year, as long as the unpaid balance did not exceed 110% of the initial loan and the loan would become fully amortized by February 1, 2010. The initial interest rate was 6.722%. From January 1, 2006 to January 31, 2006, the interest rate was 1.5%. After February 1, 2006, the interest rate was calculated at 3.5% above the Federal Home Bank of San Francisco Index 15 days before the change date, except the interest rate would not go above 11.5% per year. Thus, in February of 2006, plaintiffs' interest rate was 6.796%. It continued to increase each month, so that in December of 2006, the interest rate was 8.132%. The loan had a prepayment penalty if paid off in the first three years of the loan. Plaintiffs did not discover that the terms of their loan were different from the terms set forth in the December 6, 2005 letter until after the loan closed.

After the loan closed, Hilltop Lending received a check for $13,132.50. This amount included a $1,195.00 processing fee, a $75.00 credit report fee, and the $11,862.50 yield spread premium. Hilltop Lending sent plaintiffs $1,868.00 for the fees in excess of $2,000.00. In the document entitled "Mortgage Loan Disclosure Statement/Good Faith Estimate," defendants indicated to plaintiffs that there would be a "Mortgage Broker Commission/Fee" of $10,350.00 that would not be paid out of the loan proceeds and that there would be no additional compensation from the lender. Kaur did not explain to plaintiffs the effect that the yield spread premium compensation had on their interest rates, nor did any other defendants. Plaintiffs believe that this compensation was paid to Hilltop Lending for arranging a loan on terms less favorable than plaintiffs were eligible for, including the higher interest rate and prepayment penalty.

Plaintiffs filed a complaint in the United States District Court for the Northern District of California on November 30, 2006. Defendants have now filed a motion to compel arbitration and stay

3

the action, and a motion to dismiss.

## LEGAL STANDARD

### I. Motion to Compel Arbitration and Stay Action

The California Arbitration Act ("CAA"), Code of Civil Procedure § 1281.2 prescribes a summary process for resolving petitions to compel arbitration.[3] The CAA embodies a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 9 (1992). It does not allow for adjudication of a demand to arbitrate by jury trial, but instead requires that trial courts sit as the trier of fact and weigh all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the courts' discretion, to reach a final determination. *Rosenthal v. Great Western Financial Securities Corp.*, 14 Cal. 4th 394, 413-14 (1996). A party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement by a preponderance of the evidence. *Id*. On the other hand, a party opposing arbitration bears the burden of proving by a preponderance of the evidence all facts necessary to its defense. *Id*.

### II. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is

---

[3] Both parties contend that the Federal Arbitration Act does not apply because this case does not involve interstate commerce. This Court is not convinced that the FAA does not apply, but does agree with the parties that the result of the motion would be the same under either the FAA or California state law principles. Thus this Order discusses the motion as it was briefed, under state law principles.

4

1 remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See*
2 *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

3 If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The
4 Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request
5 to amend the pleading was made, unless it determines that the pleading could not possibly be cured by
6 the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal
7 quotation marks omitted).

**DISCUSSION**

**I.    Motion to Compel Arbitration and Stay Action**

Defendants argue that the parties contracted to have any disputes arising out of the transaction resolved by arbitration. Plaintiffs argue that there was no agreement to arbitrate because defendant did not sign the purported arbitration agreement. Plaintiffs further argue that, if there was an agreement, the agreement is unenforceable because there was no meeting of the minds as to several material terms. Alternatively, plaintiffs argue that the agreement is unenforceable because it is procedurally and substantively unconscionable. The Court finds that there was no valid agreement because there was no meeting of minds as to several material terms of the contract.

The document in dispute (hereinafter the "addendum") is a single page entitled "ADDENDUM" that was signed on September 23, 2005, only by plaintiffs. The addendum does not refer to any other documents. It reads:

> **1.    Simple Arbitration Clause:**
>
> The parties agree to submit any disputes from this agreement to final and binding arbitration under the Commercial Rules of the American Arbitration Association. The arbitrator's judgment on the law of this jurisdiction shall be final and binding.
>
> **2.    Mediation and arbitration clauses** (optional requirement of mediation before arbitration):
>
> A. If any dispute arising from this agreement, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Rules.
>
> B. If mediation fails, the parties agree to submit any disputes arising from this agreement to final and binding arbitration under the

5

> Commercial Rules of the American Arbitration Association. The arbitrator's judgment on the law of this jurisdiction shall be final and binding.
>
> **3.     Locale provision** (may be added to any arbitration clause):
>
> The place of arbitration shall be Sacramento, CA.
>
> **4.     Discovery Limitation** (optional provision):
>
> No discovery shall be permitted except as allowed in the sole discretion of the arbitrator.
>
> **5.     Limitations of arbitrator's powers** (optional provision):
>
> Any award in an arbitration initiated under this clause shall be limited to monetary damages and shall include no injunction or direction to any party other than the direction to pay a monetary amount.
>
> **6.     Costs and Fees** (optional provisions):
>
> A.    The prevailing party shall be entitled to an award of reasonable attorney fees and costs.
>
> B.    The arbitrator shall award to the prevailing party, if any, as determined by the arbitrator, all of its costs and fees. "Costs and fees" mean all reasonable pre-awarded expenses of the arbitration, including the arbitrator's fees, administrative fees, travel expenses, out-of-pocket expenses, such as copying and telephone court costs. Witness fees, and attorney's fees.
>
> C.    Each party shall bear its own costs and expenses and an equal share of the arbitrator's and administrative fees of arbitration.
>
> D.    The arbitrator may determine how the costs and expenses of the arbitration shall be allocated between the parties, but shall not award attorney's fees.

Decl. of Ibrahim K. Kaba in Support of Def's Motion, Exh. 12 ("Kaba Decl.") (emphasis in original).

Defendants argue that the addendum is a valid arbitration agreement. Notwithstanding the language indicating that paragraphs two through five are optional, defendants argue that it is "clear" that those provisions are binding. Defendants concede that because the options described in paragraph six are mutually exclusive, there was no agreement regarding paragraph six. Plaintiffs argue that the addendum does not reflect a meeting of the minds. Specifically, plaintiffs point out that the addendum does not state what agreement is subject to binding arbitration, who the parties agreeing to arbitrate are, and what the terms of the agreement are.

6

Under California law, "[a] written agreement to submit to arbitration an existing controversy . . . is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Cal. Code Civ. Proc. § 1281.2 "California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz v. Found. Health Psychare Serv., Inc.*, 24 Cal. 4th 97, 99 (2000). The policy favoring arbitration, however, does not come into play unless it is determined that the parties agreed to arbitrate their disputes, a determination that requires analysis of the state law principles that govern the formation and interpretation of contracts. *See Badie v. Bank of America*, 67 Cal. App. 4th 779, 790 (1998) (internal citations omitted).

If it can be done without violating the intent of the parties, a contract must receive an interpretation that is lawful, operative, and capable of being carried into effect. *See* Cal. Civ. Code § 1643. California law, however, precludes the enforcement of a contract when it cannot be determined what terms the parties agreed upon. *See Terry v. Conlon*, 131 Cal. App. 4th 1445, 1459 (2005); *Weddington Production, Inc., v. Flick*, 60 Cal. App. 4th 793, 801 (1998). Mutual consent is determined by "what the outward manifestations of consent would lead a reasonable person to believe." *Weddington*, 60 Cal. App. 4th at 811 (citing *Meyer v. Benko*, 55 Cal. App. 3d 937, 942-43 (1976)). The terms of the contract must be reasonablely certain so as to provide a basis for determining the existence of a breach. *See id*.

An enforceable arbitration agreement requires a meeting of the minds by the parties at the time they make their agreements. Moreover, because arbitration waives the important right to a jury trial, an arbitration agreement must be clear and unambiguous; where there is doubt surrounding whether a party has waived his or her right to a jury trial, the doubt should be resolved in favor of preserving that right. *Badie*, 67 Cal. App. 4th at 804.

In this case, the terms of the addendum are too uncertain to be enforceable. In paragraph one, the addendum refers to "this agreement." On September 23, the day plaintiffs signed the addendum,

///

1 plaintiffs also signed a Uniform Residential Loan Application, an authorization to release information, an addendum to the Uniform Residential Loan Application, a Mortgage Loan Disclosure Statement/Good Faith Estimate, a document entitled Hilltop Financial Mortgage, and a Mortgage Loan Origination Agreement. Kaba Decl., Exhs. 4-11. Defendants insist that the addendum relates to the Mortgage Loan Origination Agreement. Defendants do not provide any evidence that this is so and there is no indication in either the Mortgage Loan Origination Agreement or the addendum that the two relate to each other.[4] Thus, the court finds that the addendum does not evidence a meeting of the minds regarding which agreement is subject to arbitration.

There was also no meeting of the minds regarding the material terms in paragraphs two through six. In *Terry*, the court refused to enforce a settlement agreement because the parties agreed to the goal of settlement, but did not agree to the means of achieving the goal. 131 Cal. App. 4th at 1459. The goal of the settlement was to distribute contested property according to a specified arrangement. *Id*. However, several key details were not agreed upon, including the meaning of an "independent manager" and whether or not an agreed upon trust should be a QTIP trust. *Id*. These issues were material to the settlement because they impacted the parties financially. *Id*. Because there was no meeting of minds as to material terms of the agreement, the court held there was no enforceable contract. *Id*. at 1460. Furthermore, it would be improper for a judge to create material terms of the settlement. *Id*. (citing *Weddington,* 60 Cal. App. 4th at 810-11).

Similarly, here the language next to paragraphs two through five indicating that the provisions in those paragraphs are optional indicates that, while the parties may have agreed to the goal of arbitration, the terms on which this would occur were not settled. *See* Kaba Decl., Exh. 12. Paragraph six is especially material because it purports to set forth how costs and fees should be apportioned and thus affects the parties financially. *See id.* The Court refuses to do as defendants urge and choose which

---

[4] Defendants' argument that the Mortgage Loan Origination Agreement is the only document the addendum could relate to is unavailing in light of the fact that numerous agreements were signed on the day the addendum was signed. Defendants' argument that a statement by Hilltop Lending employee, Ibrahim Kaba, proves that the addendum was part of the Mortgage Loan Origination Agreement is likewise unavailing. Kaba states that he "generally supervised and oversaw" plaintiffs loan application process. *See* Kaba Decl. ¶ 5. However, consent is determined by outward manifestations, not subjective, after the fact explanations. *See Weddington*, 60 Cal. App. 4th at 811.

8

1 optional terms of the addendum are binding. The addendum does not reflect sufficient meeting of the
2 minds for the Court to find that plaintiffs waived their important, constitutionally-protected right to a
3 jury trial. *See Badie*, 67 Cal. App. 4th at 804. Thus, the Court DENIES defendants' motion to compel
4 arbitration.

## II.  Motion to Dismiss

Defendants argue that the court should dismiss the following causes of action for failure to state a claim: (1) plaintiffs' Section 8(a) RESPA claim; (2) plaintiffs' Section 8(b) RESPA claim; (3) plaintiffs' fraud claim against defendant Nguyen; (4) all other claims against defendant Nguyen; and (5) plaintiffs' claims of breach of fiduciary duty and professional negligence against defendant Lisa Kaur. The Court will discuss each claim in turn.

### A.  Section 8(a) RESPA claim

Plaintiffs allege that Hilltop Lending violated Section 8(a) of RESPA by accepting a $11,862.50 yield spread premium from Downey as a kickback for arranging the loan at a higher interest rate than plaintiffs were otherwise eligible to receive. *See* First Amended Complaint ("FAC") ¶¶18, 33.

Section 8(a) of RESPA prohibits "kickbacks" in mortgage loan transactions and specifically provides that "[n]o person shall accept a fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). However, "payment to any person of a bona fide salary or compensation for goods or facilities actually furnished or for services actually performed" is not considered a kickback. *See* 12 U.S.C. §2607(c)(2).

Compensation in the form of yield spread premiums is not per se illegal or legal. *See Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003); Department of Housing and Urban Development ("HUD") 2001-1 Policy Statement, 66 Fed. Reg. 53052, 5304 (2001). The Ninth Circuit has adopted the HUD regulations' two-part test for determining whether yield spread premiums violate the kickback provision of RESPA. *See Schuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004, 1012 (9th Cir. 2002). Under the HUD test, "the first question is whether goods or facilities were actually furnished or services

9

**United States District Court**
For the Northern District of California

1   were actually performed for the compensation paid. . . . The second question is whether the payments
2   are reasonably related to the value of the goods or facilities that were actually furnished or services that
3   were actually performed." 66 Fed. Reg. at 53054.

4   Plaintiffs concede that defendants rendered services under the first part of the test, but argue that
5   the value of the services under the second part of the test was roughly zero because:

> (1) KAUR was not licensed as a real estate salesperson, (2) the loan was arranged at an HL office which was not licensed as an HL office by the DRE, (3) the terms of the loan were misrepresented to plaintiffs so that they incurred a higher interest rate and the possibility of higher monthly payments during the first five years of the loan and will incur a prepayment penalty on their loan if it is paid within three years and, (4) the state disclosures for the loan stated that there would be no mortgage broker compensation which was not paid outside of the loan proceeds when HL received a yield spread premium of $11,862.50 outside the loan proceeds.

FAC ¶ 32.

Plaintiffs have adequately stated a claim for violations of Section 8(a) of RESPA. If the facts alleged in paragraph 32 are true, they would support a finding that the payments defendants received were not reasonably related to the services actually performed. Whether defendants misrepresented the terms of the loan, whether plaintiffs incurred a higher interest rate, and the qualifications and skills of the broker, are all factual issues that affect the value of the services provided. Moreover, the allegation that defendants did not adequately disclose the yield spread premium bears on whether defendants were paid disproportionately for their services. *See Plata v. Long Beach Mortgage Co.,* 2005 WL 3417375, at *3-*4 (N.D. Cal. Dec. 13, 2005) (denying motion to dismiss Section 8(a) claim where yield spread premiums were not clearly disclosed).

Defendants do not rebut plaintiffs' factual allegations, but argue that plaintiffs' valuation theory is not consistent with the purposes of RESPA and that plaintiffs must show that another broker would not have been paid a similar amount for the services that defendants performed. While it is true that one of the factors to be considered at step two is the relationship of the fee charged to other fees in the same geographic market, *see* 66 Fed. Reg. at 53055, there is no reason to dismiss a claim for failure to provide such comparisons. "RESPA requires a loan-specific analysis of whether the total mortgage broker compensation from all sources is reasonable." *Bjustrom*, 322 F.3d at 1208. Such an analysis is not

10

1 appropriate at the pleading stage. The Court therefore DENIES defendants' motion to dismiss the
2 Section 8(a) claim.

### B. Section 8(b) RESPA claim

Section 8(b) of RESPA provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

#### 1. Processing fee

Plaintiffs allege that defendants violated Section 8(b) of RESPA by charging an unearned processing fee that was not an actual charge for processing plaintiffs' loan. *See* FAC ¶¶ 19, 34. Defendants argue that plaintiffs fail to state a claim because plaintiffs only allege an overcharge, as opposed to a split of fees.

Although the Ninth Circuit has not addressed whether Section 8(b) prohibits overcharges, several other circuits have. The Second, Third, Fourth, Seventh, and Eighth Circuits agree that Section 8(b) does not prohibit overcharges. *See Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384, 387 (3d. Cir. 2005); *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 56 (2d Cir. 2004); *Haug v. Bank of America, N.A.*, 317 F.3d 832, 836 (8th Cir. 2003); *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261 265 (4th Cir. 2002); *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623, 626-28 (7th Cir. 2001); *but see* 66 Fed Reg. at 53058 (suggesting that Section 8(b) prohibits overcharges). This Court agrees and finds that the text of Section 8(b) was not intended to serve as a price cap for settlement services. *See Martinez v. Wells Fargo Bank, N.A.*, 2007 WL 963965, at *5 (N.D. Cal. March 30, 2007) (granting motion to dismiss where plaintiff alleged overcharges, but not fee-splitting). Thus, the Court DISMISSES plaintiffs' Section 8(b) claim to the extent it is based on the processing fee.

Plaintiffs argue that they can allege a split and seek leave to amend their complaint to allege that defendants improperly split the processing fee between its Union City office and its Milpitas office. A branch office of a corporation is not a legally distinct corporate entity. *See First Nat'l Bank of Boston*

11

*v. Banco Nacional de Cuba*, 658 F.2d 895, 900 (2d Cir. 1981) ("[F]ederal law regards a national bank and its branches as a single entity."); *Western Beef, Inc. v. Compton Inv. Co.*, 611 F.2d 587, 591 (5th Cir. 1980) (holding that a division of a corporation is not a separate legal entity); *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 18 (3d Cir. 1978) (same). Thus, plaintiffs' proposed amendment does not state a claim under Section 8(b) either. Plaintiffs additionally argue that they may be able to allege a split between Hilltop Lending Corporation and Hilltop Financial Mortgage Inc. If plaintiffs can allege that these are two distinct entities and they split a fee as prohibited by Section 8(b), they are granted leave to do so.

### 2. Credit report fee

Plaintiffs allege that they paid $75.00 for a credit report fee and that "the amount charged for the credit report exceeded the actual charge for the credit report." FAC ¶¶ 19, 34. This is a "mark-up" claim in that it alleges that a settlement services provider charged plaintiffs for the services of a third party vendor and kept a portion of that charge for itself. Section 8(b) prohibits mark-ups. *See Santiago*, 417 F.3d at 390; *Kruse*, 383 F.3d at 61; *Sosa v. Chase Manhattan Mortgage Corp.*, 348 F.3d 979, 983 (11th Cir. 2003); *see also* Reg. X, 24 C.F.R.§ 3500.14. For example, in *McCulloch v. Great Western Bank,* 1998 WL 34013543, at * 2 (W.D. Wash. Feb. 11 1998), the court refused to dismiss a complaint where the plaintiff alleged that the bank accepted $50.00 from plaintiff for a credit report, paid $10.00 of that amount to a credit report company, and improperly kept the remaining $40.00.

Defendants agree that Section 8(b) prohibits mark-ups, but argue that plaintiffs cannot credibly allege that defendants improperly kept a portion of the credit report fees. In *Sosa,* the plaintiffs complained that a portion of the $50.00 charge they paid to a bank for courier and messenger fees was an illegal mark-up. 348 F.3d at 983. The court dismissed the complaint because the plaintiffs did not allege that the portion of the fee retained by the bank was not for services that the bank performed, i.e., arranging the deliveries. *Id*.

Similarly, plaintiffs here fail to allege that the portion of the $75.00 that defendants retained was not for services actually rendered, i.e., arranging the credit report. Thus, the Court DISMISSES plaintiffs' Section 8(b) claim to the extent it is based on the credit reporting fee. Plaintiffs are granted

12

leave to amend to state a claim that defendants illegally retained a portion of the credit report fee for services they did not perform.

### C. Fraud claim against Nguyen

Plaintiffs allege fraud against all defendants. Defendants seek to dismiss the fraud claim against Nguyen. California Civil Code Section 1709 imposes liability for fraud on "one who willfully deceives another with intent to induce him to alter his position to his injury or risk." In order to establish a cause of action for fraud, plaintiffs must plead and prove misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damage. *See Conrad v. Bank of America*, 45 Cal. App. 4th 133, 156 (1996). Fraud claims are subject to the additional Federal Rule of Civil Procedure 9(b) requirement that "the circumstances constituting fraud or mistake shall be stated with particularity." This rule requires that claims of fraud include the "who, what, when, where, and how" of the alleged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). The averments must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Defendants seek to dismiss the fraud claim against Nguyen because plaintiffs fail to allege with sufficient specificity any wrongful or fraudulent conduct on his part. Plaintiffs allege that Hilltop Lending and Kaur made misrepresentations. *See* FAC ¶¶ 11-14. Plaintiffs also allege that Nguyen was the designated broker and licensed officer of Hilltop Lending and that he "ordered, authorized, ratified or participated in the activities alleged in this complaint." FAC ¶ 5. Plaintiffs argue that these allegations satisfy the higher pleading standard of Rule 9(b) because as the designated officer of Hilltop Lending, Nguyen is statutorily liable for the actions of Kaur based on principles of agency codified in California Business & Profession Code §§ 10159.2, 10130, 10177(j), and 10240(c).

In *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007), the court affirmed the dismissal of a fraud claim against two of the defendants, Presidio and DB, because the plaintiffs failed to adequately plead that Presidio and DB made misrepresentations. The complaint alleged generally that the defendants engaged in fraudulent conduct and that two defendants, KPMG and B & W, made

13

1 misrepresentations. *Id.* The complaint also alleged that Presidio and DB were part of a conspiracy with
2 KPMG and B & W, and that Presidio and DB were the agents of KPMG and B & W. *Id.* Plaintiffs
3 therefore argued that Rule 9(b) was satisfied with respect to the fraud claims against Presidio and DB.
4 *Id.* The court disagreed because in a fraud suit the plaintiffs must, at a minimum, "identify the role of
5 each defendant in the alleged fraudulent scheme." *Id.* (quoting *Moore v. Kayport Package Express, Inc.*,
6 885 F.2d 531, 541 (9th Cir. 1989) (internal brackets omitted)).

7 As in *Swartz*, plaintiffs here generally allege fraudulent conduct by all defendants, but only
8 allege that Kaur and Hilltop Lending made misrepresentations.[5] It is not enough to allege that Nguyen
9 was responsible for all the acts of Kaur and Hilltop Lending. Plaintiffs must identify the specific role
10 of Nguyen in the fraudulent scheme so that he may defend himself against this charge. *See id.*

11 Plaintiffs' reliance on *Greenberg v. Sala*, 822 F.2d 882, 886 (9th Cir. 1987), is misplaced. In
12 *Greenberg,* the court declined to impose Rule 11 sanctions on an attorney who filed a complaint where
13 the attorney knew that some of the defendants were only liable under a theory of agency, vicarious
14 liability, or respondeat superior, but the attorney did not allege these theories in the complaint. The
15 court held that, "a person legally responsible for an act may be alleged to have committed it without
16 going into the theories which support that ultimate fact." *Id.* at 886.

17 Rule 9(b), however, was not an issue in that case. The issue was whether defendants were
18 subject to sanctions for pleading untrue facts. Moreover, although the *Greenberg* plaintiffs alleged fraud
19 in the complaint, it is unclear from the opinion whether agency was the theory underlying the fraud
20 allegation. In discussing the necessity of pleading agency, the court only referred to "certain wrongful
21 acts" that defendants committed. *Id.* at 886. Thus, it is not clear whether Rule 9(b) was even triggered.
22 In *Munoz v. International Home Capital Corp.*, 2004 WL 3086907, at *10 (May 4, 2004 N.D. Cal.), the
23 court held that generally under *Greenberg*, a party need not separate out the specific wrongs attributed
24 to defendants where plaintiffs alleged agency. The court nonetheless went on to dismiss the claims of

---

[5] *Swartz* is distinguishable from this case in that Presidio and DB were alleged to be agents and co-conspirators of those who made misrepresentations, while here, Nguyen is alleged to be the principal of those who made the misrepresentations. This difference is not relevant. In both instances, the plaintiffs must do more than make conclusory allegations about a participant's role in committing a fraud. Stating that a legal relationship exists is not enough.

14

fraud and misrepresentation against defendants who were not specifically alleged to have committed fraud, but who plaintiffs averred were liable under an agency theory. *See id.* Thus, *Greenberg* does not absolve plaintiffs of their duty to plead fraud claims with the requisite specificity.

The inadequacies of plaintiffs' first cause of action appear curable by amendment. The Court therefore GRANTS defendants' motion to dismiss the fraud claim against Nguyen with leave to amend. Plaintiffs may amend their complaint to adequately explain the involvement of defendant Nguyen in the alleged fraud, should they wish to do so.

### D.     Claims based on Nguyen's status as an the alter ego of Hilltop Lending

Defendants seek to dismiss all other claims against Nguyen because in the section of the complaint entitled "Parties," plaintiffs make only conclusory allegations about Nguyen's involvement with the loan.

Plaintiffs allege that Nguyen was the alter ego of Hilltop Lending when they state that:

> "[Hilltop Lending] was inadequately capitalized, failed to maintain corporate formalities and was designed to limit the liability of Nguyen. There was such a unity of interest and ownership between Nguyen and [Hilltop Lending] that the individuality and separateness of Nguyen and [Hilltop Lending] has ceased to exist and adherence to the fiction of the separate existence of [Hilltop Lending] would sanction fraud and promote injustice."

FAC ¶ 6. Defendants argue that these allegations should be dismissed because they are conclusory and that plaintiffs failed to state facts upon which plaintiffs beliefs are founded.

Alter ego theory is a doctrine of corporation law under which courts may disregard the protection from liability provided by corporate entities. *See Hokama, v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 647 (N.D. Cal. 1983). Conclusory allegations of alter ego status will not survive a motion to dismiss. *See id*. Alter ego determinations, however, are "highly fact-based, and require considering the totality of the circumstances." *Legacy Wireless Services, Inc. v. Human Capital, LLC*, 314 F. Supp. 2d 1045, 1058 (D. Or. 2004).

This case is unlike *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005), where the plaintiffs merely alleged that "Bank One exercised such dominion and control over Bank One, NA and Bank One Arizona that it is liable according to the law for the acts of Bank One." Nor is this

15

1 case like *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006), where the plaintiffs
2 failed to allege that injustice would result if corporate formalities were maintained and failed to allege
3 a factual basis for imposition of alter ego liability.

4 Other cases demonstrate the minimum degree of specificity necessary to state a claim of alter
5 ego liability. For example, in *In re Napster, Inc. Copyright Litigation*, 354 F. Supp. 2d 1113, 1122
6 (N.D. Cal. 2005), the court held that an allegation that one of the major shareholders had "essentially
7 full operational control" over Napster during a specified period was sufficient to justify allowing
8 plaintiffs to proceed on an alter ego theory. In *Oregon Laborer-Employers Health & Welfare Trust*
9 *Fund v. Allstate Industrial and Marine Cleaning, Inc.*, 850 F. Supp. 905 (N.D. Cal. 1994), the plaintiffs
10 alleged that Allstate and another defendant, Action Cleaning, shared the same corporate offices, used
11 the same employees, performed the same type of work, and interchanged vehicles, real property, and
12 assets. The court held that these allegations were sufficient to state a claim for alter ego liability.

14 As in *Napster* and *Oregon Labor-Employers*, plaintiffs here allege a sufficient factual basis to
15 support a theory of alter ego liability. The Court, therefore, DENIES defendants' motion to dismiss all
16 claims against Nguyen.

18 **E.     Breach of fiduciary duty and professional negligence claims against Lisa Kaur**
19 Defendants move to dismiss the breach of fiduciary duty and professional negligence claims
20 against Lisa Kaur because plaintiffs do not allege that she is a real estate broker or an agent.
21 Plaintiffs allege that Kaur:

> "did not hold a real estate salesperson license at the time of the transaction referred to in this complaint. Plaintiffs are further informed and believe that at all relevant times K[aur] acted as an agent or employee of [Hilltop Lending]. K[aur] solicited plaintiffs for the loan referred to in this complaint. Plaintiffs are informed and believe that she negotiated this loan on behalf of plaintiffs."

FAC ¶ 7. Plaintiffs further allege that Kaur arranged the terms of their loan and made various promises to them throughout the process. *See* FAC ¶¶ 11-14. Plaintiffs argue that these allegations are sufficient to impose liability on Kaur based on the duties she owed plaintiffs as their agent.

16

Defendants are only liable for breach of fiduciary duty or negligence if they owed a duty of care to plaintiffs. *See McCollum v. Friendly Hills Travel Center*, 172 Cal. App. 3d 83, 90-91 (1985). An agent owes a duty to its principal and must act in the interest of the principal, regardless of whether or not the agent is a licensed real estate broker. *See Mendoza v. Continental Sales Co.*, 140 Cal. App. 4th 1395, 1405 (2006); *Fischer v. Machado*, 50 Cal. App. 4th 1069, 1072 (1996). "An agent is anyone who undertakes to transact some business, or manage some affair, for another, by authority of and account of the latter, and to render an account of such transactions. The chief characteristic of the agency is that of representation, the authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties." *McCollum v. Friendly Hills Travel Center*, 172 Cal. App. 3d 83, 91 (1985) (internal citations omitted).

Plaintiffs' claims of breach of fiduciary duty and negligence are based on allegations that Kaur made various misrepresentations to plaintiffs, and thus are "grounded in fraud." Claims that are "grounded in fraud" are subject to the heightened pleading requirements of Rule 9(b), discussed above, even if fraud is not an element of the claim. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *Bacon ex rel Moroney v. American Int'l. Group*, 415 F. Supp. 2d 1027, 1032 (N.D. Cal. 2006).

Although plaintiffs do not expressly allege that Kaur was their agent, they do state the circumstances constituting the breach of fiduciary duty and negligence claims with sufficient particularity. Plaintiffs set forth a detailed chronology of their interaction with Kaur throughout the course of their obtaining the loan. FAC ¶¶ 11-14. Moreover, they allege that "she negotiated th[e] loan on behalf of plaintiffs." FAC ¶ 7. This is sufficient to give defendants notice of the particular misconduct, i.e., that Kaur violated a duty she owed to plaintiffs, so that they may defend against the charge. *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Thus, the Court DENIES defendants' motion to dismiss the breach of fiduciary duty and negligence claims against Kaur.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court DENIES defendants' motion to

17

compel arbitration (Docket No. 21) and GRANTS IN PART and DENIES IN PART defendants' motion to dismiss plaintiffs' First Amended Complaint.[6]  (Docket No. 16).  **Plaintiffs must file a second amended complaint, should they wish to do so, by May 18, 2007.**

**IT IS SO ORDERED.**

Dated:  April 25, 2007

*Susan Illston*
SUSAN ILLSTON
United States District Judge

---

[6] Both parties filed objections to evidence submitted in connection with these motions.  The objections are OVERRULED as moot.  The Court did not rely on any of the evidence objected to by defendants, and the evidence objected to by plaintiffs was only material to the arbitration dispute, which the Court decided in plaintiffs' favor. [Docket Nos. 28 & 32]